IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ERIN HURT, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID L. HURT, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-18-1150-SLP |
| VANDERBILT MORTGAGE AND FINANCE, INC., TOTAL HOUSING, L.L.C., FORD MOTOR CREDIT, ASSOCIATES 1996-2 and JOHN DOES 1-1000, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is the Motion to Dismiss of Defendant Vanderbilt Mortgage and Finance, Inc. (Vanderbilt) [Doc. No. 7]. Plaintiff has responded [Doc. No. 8] and Vanderbilt has replied [Doc. No. 9]. The matter is fully briefed and ready for determination.

**I.**     **Introduction**

Plaintiff initiated this action in the District Court of Cleveland County, State of Oklahoma and Vanderbilt removed the action to this Court. *See* Notice of Removal [Doc. No. 1]. The only issued summons reflected in the record is to Vanderbilt. After removal, Plaintiff voluntarily dismissed Defendant Ford Motor Credit. *See* Dismissal Without Prejudice of Ford Motor Credit [Doc. No. 6]. The other Defendants have not been served.

Plaintiff seeks a declaratory judgment against Vanderbilt and additionally brings claims for conversion, violations of the Oklahoma Consumer Protection Act, violations of the Oklahoma Consumer Credit Code (supervised lender provisions), unjust enrichment and unconscionability. Vanderbilt seeks dismissal of all claims brought against it.

## II. Governing Standard

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan County*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2009)); *see Iqbal*, 556 U.S. at 676–80. The plaintiff cannot merely give "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Conclusory allegations are not entitled to the court's presumption; rather the plaintiff must plead facts that at least make the claims plausible and raise the "right of relief above the speculative level." *Id*. at 555.

### III. Factual Allegations of the Petition

The following factual allegations are taken from the Petition and the Court accepts the allegations as true for purposes of ruling on Vanderbilt's Rule 12(b)(6) motion. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009).

In 1996, David L. Hurt entered into a Manufactured Home Retail Installment Contract/Security Agreement (Contract) with Total Housing for the purchase of a manufactured home. The Contract is attached to the Petition. *See* Pet., Ex. A. The amount financed under the Contract was $69,485.50 with an annual percentage rate of interest of 11.030%. The Contract was assigned to Ford Motor Credit. Vanderbilt began servicing the loan in December 2006.

Mr. Hurt died in April 2017 and Erin Hurt was appointed as the personal representative of his estate in May 2017. To date, Mr. Hurt has paid $174,403.19 to Defendants. Vanderbilt continues to send monthly statements to Plaintiff for payment but did not file any claim in the probate of the estate.

As of September 28, 2018, the purported principal amount due under the Contract was $69,283.27. Plaintiff has requested a complete accounting of payments made pursuant to the Contract, from its origination, but Vanderbilt has informed Plaintiff that it has no payment records prior to obtaining the servicing rights. Plaintiff further alleges that "had the loan been amortized in accordance with a regular amortization schedule, that loan would have been paid off in 2008." Pet., ¶ 68. And, Plaintiff alleges that on June 19, 2017, Vanderbilt "sent a new amortization schedule showing that the loan would not be paid in

fully until December 2046 after an additional 355 payments were made on a loan which originally contemplated 360 payments." *Id*., ¶ 69.

IV. **Discussion**

    A. **Declaratory Relief and Violation of the Oklahoma Consumer Credit Code**

Plaintiff seeks a declaratory judgment against Vanderbilt that: (1) the Contract is void and that the Estate of David L. Hurt is not obligated to pay the principal, the loan finance charge or any other charges added to the account; and (2) the Estate of David L. Hurt is entitled to recover each and every payment, with interest, tendered to Vanderbilt and its predecessors. Plaintiff bases her right to this relief on allegations that Total Housing was not a supervised lender at the time the loan originated and, therefore, the requirements of Oklahoma law that "only a supervised lender may make or take the assignment of a supervised loan" have been violated. Pet., ¶ 21.

Plaintiff's claim arises under Oklahoma's Uniform Consumer Credit Code, Okla. Stat. tit. 14A, §1-101 et seq. (U3C). In addition to her request for declaratory relief, Plaintiff brings a separate claim for relief alleging a violation of the U3C. *See* Pet., ¶¶ 58-65.[1]

---

[1] It is unclear whether Plaintiff's U3C claim for alleged violations of the "supervised lender provisions" is brought against Vanderbilt. The allegations of the Petition with respect to this claim specifically reference only Defendants Total Housing and Associates 1996-2. *Id*., ¶¶ 61-62. Nonetheless, any such claim against Vanderbilt would be subject to dismissal on the same grounds as Plaintiff's claim for declaratory relief. Therefore, the Court assumes Plaintiff intended to bring such a claim against Vanderbilt and finds dismissal is proper.

4

The U3C applies only to "consumer loans" and provides that "[u]nless a person is a supervised financial organization or has first obtained a license . . . authorizing him to make supervised loans, he shall not engage in the business of (1) making supervised loans; or (2) taking assignments and undertaking direct collection of payment from or enforcement of rights against debtors arising from supervised loans." Okla. Stat. tit. 14A, § 3-502 (1996).[2] A violation of § 3-502 deems the loan void. *Id.*, § 5-202(2).

As Vanderbilt correctly asserts, under the U3C a "supervised loan" is a type of "consumer loan" and loans that exceed $45,000.00 in principal amount are excluded from the definition of a consumer loan. *Id.*, §§ 3-104 and 3-501(1) (1996). Here, the loan at issue as alleged in the Petition exceeds $45,000 in principal amount and, therefore, Plaintiff fails to state a claim under the U3C.[3]

Plaintiff wholly fails to address this issue in her response and thus has confessed the issue. Instead, Plaintiff now argues that her request for declaratory relief remains sufficient independent of the U3C. *See* Pl.'s Resp. at 3 ("[Vanderbilt] mischaracterizes Plaintiff's claims as solely stemming from violations of the [U3C]."). Plaintiff contends Vanderbilt has no contractual rights to the loan. *See id.* ("Plaintiff has alleged facts to show the contract is void not only under the U3C but also as a result of not actually receiving the contractual rights to the loan, not having records for the loan prior to the years Vanderbilt

---

[2] The Court cites the version of the U3C in effect at the time the loan was entered into but the current version of the cited provision of the U3C is substantially the same.

[3] As Vanderbilt notes, Plaintiff's claim would similarly be barred under the current version of the U3C which has a cap of $50,000.00. *See* Okla. Stat. tit. 14A, § 3-104(d).

5

began demanding payment on the loan, for taking payment for over twenty (20) years but not applying a single cent to the principal balance, and not knowing the identity of the party who owned the loan.").

Plaintiff raises a new claim and factual matters not alleged in the Petition. *See, e.g., In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp.2d 1178, 1203 (D. Colo. 2004) (a plaintiff may not further amend a complaint by alleging new facts in response to a motion to dismiss). The Petition alleges that "Plaintiff is entitled to a Declaratory Judgment that the loan in question is void . . . ." Pet., ¶ 23. But the only facts to support this claim against Vanderbilt are based on allegations that Total Housing was not a supervised lender under the U3C. *Id.*, ¶ 21. Plaintiff sets forth no other facts to establish the Contract Mr. Hurt entered into with Total Housing is void. Nor has Plaintiff alleged facts to demonstrate that any loan servicing agreement entered into by Vanderbilt is void. *See* Pet., ¶ 12 ("Upon information and belief, Vanderbilt began servicing the loan on or about December 1, 2006."). Thus, the Petition fails to adequately develop any cause of action for declaratory relief, based upon an alleged void contract independent of the U3C, and the Court rejects any such purported theory Plaintiff argues in response to Vanderbilt's Motion.[4]

### B. Conversion

In support of her conversion claim, Plaintiff again relies on allegations that Vanderbilt "has no record of payments on this loan prior to July 2005." Pet., ¶ 37. Plaintiff

---

[4] Plaintiff has not sought leave to amend the Petition. Regardless, the additional facts argued in her response, even if included in an amended pleading, do not suffice to state a plausible claim for declaratory relief against Vanderbilt.

6

further alleges Vanderbilt and other defendants "wrongfully took possession of funds belonging to Mr. Hurt and his Estate thereby preventing Mr. Hurt and his Estate from having access to the funds." *Id.*, ¶ 38. As relief, Plaintiff seeks "a refund of all funds tendered on this loan with interest from October 14, 1996." *Id.*, ¶ 40.

Vanderbilt moves for dismissal of this claim on two grounds. First, Vanderbilt argues under Oklahoma law, a claim for conversion can be brought only as to tangible personal property, not money. Second, Vanderbilt argues the economic loss rule bars any tort claim for conversion where, as here, the plaintiff alleges solely economic damages and has not alleged any damage to person or property.

"Conversion is defined by Oklahoma law as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *American Biomedical Group, Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016) (internal quotation marks and citation omitted). "This definition does not include intangible property." *Id*. Thus, Oklahoma law precludes a conversion claim where, as here, the recovery sought is for money only. *See Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla. 1992) ("The general rule in Oklahoma is that only tangible personal property may be converted. An action for conversion would not lie [in a dispute over proceeds of an insurance policy]. What the seller has here is the right to recover money, a chose in action, which under Oklahoma law is considered intangible personal property.") (emphasis in original, footnotes omitted); *Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994) ("Conversion does not lie for a debt."); *AG Equip. Co. v. AIG Life Ins. Co., Inc.*, No. 07-CV-0556-CVE-PJC, 2008 WL 4570319 at *5 (N.D. Okla. Oct. 10, 2008) (unpublished

op.) (applying Oklahoma law and dismissing claim for conversion based on allegation that defendant wrongfully retained money paid by plaintiff).

In her response, Plaintiff does not address Vanderbilt's arguments or the applicable Oklahoma law that prohibits a claim for conversion under the circumstances at issue here. Instead, without citing any legal authority, Plaintiff argues that because the Contract is void, her conversion claim stands. *See* Pl.'s Resp. at 7-8. As set forth, Plaintiff has failed to allege facts sufficient to state a claim premised on a void contract. Thus, Plaintiff's argument necessarily fails.

Accordingly, the Court finds Plaintiff has failed to state a plausible claim for relief for conversion and the claim is dismissed. Based on this finding, the Court finds it unnecessary to address Vanderbilt's additional argument that dismissal of the conversion claim is proper under the economic loss rule.

### C. Oklahoma Consumer Protection Act

Plaintiff brings a claim pursuant to the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 et seq. (OCPA). Pet., ¶¶ 50-57. Plaintiff alleges that "[t]he transaction that is the subject of this lawsuit is a consumer loan transaction as defined by the OCPA because it was entered into for the [sic] purposes that were personal or household oriented." Pet., ¶ 53. Plaintiff further alleges that Defendant Vanderbilt is "not [a] regulated entit[y] removing it from the reach of the OCPA." *Id.*, ¶ 54. And, Plaintiff alleges that the actions outlined in the Petition "constitute unfair and deceptive trade practices" in violation of the OCPA. *Id.*, ¶ 56.

As to Vanderbilt, Plaintiff alleges, inter alia, it has not provided Plaintiff a complete accounting of the loan transaction because "it has no payment records pertaining to this loan prior to allegedly obtaining the servicing rights." *Id*., ¶ 18; *see also id*., ¶ 44. Plaintiff further alleges that "Defendants" have been unjustly enriched by receiving overpayments equal to approximately $40,000.00. *Id.*, ¶¶ 45-46. According to Plaintiff's allegations, no funds were applied to the principal until approximately February of 2018. *Id*., ¶ 43.

To recover under the OCPA, the plaintiff must establish: "(1) that the defendant engaged in an unlawful practice as defined in 15 O.S. § 753; (2) that the challenged practice occurred in the course of the defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). In moving for dismissal, Vanderbilt challenges the sufficiency of Plaintiff's Complaint as to the second element – i.e., whether Plaintiff has alleged an unlawful practice.

The OCPA enumerates thirty-two different unlawful practices. As relevant here, § 753(20) prohibits "unfair or deceptive trade practice[s]."

The OCPA defines an "unfair trade practice" as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[.] *Id*., § 752(14). The OCPA defines a "deceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral[.]" *Id*., § 752(13).

Vanderbilt argues the OCPA does not apply to loan transactions but is "focused on transactions between buyers and sellers" and must be related to a "consumer transaction" as defined by the Act. *See* Okla Stat. tit. 15, § 752(2). In support, Vanderbilt principally relies upon *McClellon v. Wells Fargo Fin. Okla.*, No. 96,500, slip op. at 305 (Okla. Civ. App. 2001) [Doc. No. 7-1].

Section 752(2) defines a "consumer transaction" as the "advertising for sale, sale or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented." Okla. Stat. tit. 15, § 752(2). The phrase "consumer transaction" does not appear in § 753(20) but it is referenced in the definition of "deceptive trade practice," *see* § 752(14), incorporated into § 753(20).

In *McClellon*, the Oklahoma Court of Civil Appeals held, in an unpublished opinion, that § 753 "does not include the actions of a bank in attempting to collect on a debt." *Id*. at 5. The court reasoned that under the OCPA, unfair trade practices covered by § 753 are limited to those arising from a consumer transaction, as defined in the Act, and that the transaction about which plaintiff complained, i.e., the unfair debt collection tactics of the defendant, did not constitute such a transaction. *Id*. The court concluded that the clear legislative intent of the Act was "to provide protection for a consumer in a sale transaction involving goods or services" not "to protect borrowers in loan transactions with banks or other financial institutions." *Id*. at 4.

Plaintiff relies on *Green Tree Servicing LLC v. Dalke*, 405 P.3d 676 (Okla. 2017) to support her claim as cognizable under the OCPA. In *Green Tree*, the defendant

purchased a mobile home and financed it through plaintiff, Green Tree Servicing, LLC (Green Tree). Green Tree sued the defendant, James Dalke (Dalke), alleging he defaulted under the terms of the financing agreement by not making payments when due. Dalke brought counterclaims against Green Tree, including a claim that Green Tree engaged in deceptive trade practices under the OCPA. The trial court granted summary judgment in favor of Green Tree and granted the relief of repossession of the mobile home and judgment for the balance due under the financing agreement. Dalke appealed the trial court's decision.

The Oklahoma Supreme Court found that summary judgment was improper based on disputed issues of fact regarding the amount actually owed by Dalke to cure the default. *Id*. at 680. The court noted "plausible arguments" had been made by Dalke that Green Tree had obstructed Dalke's efforts to become timely with his payments to avoid foreclosure. *Id*. at 680-681. The court further stated the following:

> Based on the disputed evidence, *it is possible* that the "Consumer Protection Act" may have been violated and that Green Tree may have acted in bad faith by actively attempting to prevent the opportunity to cure the default. The Consumer Protection Act states:
>
>> "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;
>>
>> "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

11

> When on [sic] the evidence is viewed in the light most favorable to Dalke, as we are required to do, there is a question concerning whether Green Tree engaged in deceptive or unfair practices and whether Green Tree acted in good faith regarding Dalke's attempt at curing the default.

*Id*. at 682 (footnotes omitted, emphasis added). As Vanderbilt argues in its Reply, in *Green Tree* the Oklahoma Supreme Court did not issue any "express ruling" that the OCPA applies to lending or debt collection activities. *See* Reply at 7. Nonetheless, the court certainly indicated such activities may be covered. And, other federal district courts, applying Oklahoma law, have more recently found such activities may be covered under the OCPA notwithstanding the *McClellon* decision. *See Horton v. Bank of Am.*, 189 F. Supp. 3d 1286, 1291-94 (N.D. Okla. 2016) (finding OCPA applicable to mortgage loans and noting circumstances providing "strong evidence that the Oklahoma Supreme Court would not follow *McClellon*" including fact that the *McClellon* court gave "little consideration to the text of the [OCPA]"). Accordingly, the Court declines to find dismissal of the OCPA claim is proper at the pleading stage based on Vanderbilt's argument that the OCPA does not cover the lending services at issue.

Vanderbilt further argues the claim is barred by the OCPA's preemption clause. *See id.*, § 754(2). Section 754(2) exempts from the OCPA's coverage "[a]ctions or transactions regulated under" any other state or federal regulatory regime. Vanderbilt argues it is a mortgage lender licensed to do business in the State of Oklahoma by the Oklahoma Department of Consumer Credit (ODCC). Vanderbilt states: "[t]he ODCC oversees the enforcement of various rules and regulations governing Vanderbilt's conduct within Oklahoma." *See* Def.'s Mot. at 12-13 (citing OAC 160:1-1-1 et seq.)). Vanderbilt further

argues it is overseen by the Consumer Financial Protection Bureau pursuant to certain federal regulations. *Id*. at 13.

In response, Plaintiff argues the transaction at hand does not involve mortgage lending and, therefore, oversight by the ODCC does not exempt the conduct at issue from OCPA coverage. In reply, Vanderbilt reiterates that "[t]he financing of manufactured housing is governed by numerous federal laws, many of which are overseen by the Consumer Financial Protection Bureau." Def.'s Reply at 7. Vanderbilt cites, inter alia, a regulation governing loans to veterans for the purchase of manufactured housing, *see* 38 U.S.C. § 3712, and other law, or proposed amendments to laws, without any specificity or analysis of the cited provisions sufficient to demonstrate the conduct at issue is regulated thereunder. *Id*.[5] As such, Vanderbilt fails to demonstrate the specific conduct at issue in this action is within the scope of the authority of any state or federal regulatory regime. *See Sisemore v. Dolgencorp*, LLC, 212 F. Supp. 3d 1106, 1109 (N.D. Okla. 2016) ("The OCPA safe harbor does not apply when a defendant's conduct is governed in some respects by a state or federal agency, but the specific conduct at issue is not within the scope of the agency's authority." (internal quotation marks and citation omitted)). Accordingly, Vanderbilt's motion is denied with respect to Plaintiff's claims brought under the OCPA. On further development of the record and more thorough analysis of the exemption issue, Vanderbilt may be able to establish the exemption applies. At this time, however, the Court finds dismissal of the claim is not proper.

---

[5] No allegations in the Petition suggest Mr. Hurt was a veteran.

D. **Unjust Enrichment**

Vanderbilt also seeks dismissal of Plaintiff's claim for unjust enrichment. *See* Pet., ¶¶ 41-49. The claim is premised on Vanderbilt's alleged failure to apply funds to the principal until approximately February 2018. Plaintiff claims Vanderbilt has been unjustly enriched in the amount of approximately $40,000.00. The claim is further premised on Plaintiff's argument, rejected above, that the Contract at issue is void. *See id*., ¶ 48.

"Unjust enrichment arises from the failure of a party to make restitution in circumstances where it is inequitable, or one party holds property that, in equity and good conscience, it should not be allowed to retain." *American Biomedical*, 374 P.3d at 828 (internal quotation marks and citations omitted). "[A] party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract." *Id*.

Vanderbilt argues Plaintiff has an adequate remedy at law because "there is a valid express contract between the parties." Def.'s Mot. at 9. But Defendant identifies no contract between Plaintiff and Vanderbilt. The Petition does not allege that Vanderbilt is either a party to the Contract or the assignee of any rights under the Contract. Instead, the Petition alleges Vanderbilt serviced the loan under the Contract. *See* Pet., ¶ 12. In its Reply, Vanderbilt argues that even if it is not a party to any contract with Plaintiff, "[t]his does not change the fact that if we are to assume that payments were not properly applied, the Plaintiff could potentially have a claim against the holder for breach of the underlying loan agreement" and, therefore, Plaintiff "would have an adequate remedy at law." See Def.'s Reply at 5.

Defendant's argument, premised on assumptions and "potential" claims, is insufficient to support dismissal of Plaintiff's unjust enrichment claim. At this preliminary stage, the Court finds Plaintiff has plausibly stated a claim for unjust enrichment. The facts surrounding the "holder" of rights under the Contract are not clear.[6] Although Vanderbilt "disputes" there is any confusion as to "identify of the holder of the loan" and each transfer of the loan, *see* Def.'s Reply at 4, its dispute, without more, does not entitle Vanderbilt to dismissal of the claim on grounds that Plaintiff has an adequate remedy at law for breach of contract. *Cf. Member Servs. Life Ins. Co. v. Am. Nat. Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997) (recognizing that, as an equitable claim, unjust enrichment is not available "when *an enforceable express contract* regulates the relations of the parties with respect to the disputed issue") (emphasis added). Moreover, at the pleading stage, Plaintiff can pursue unjust enrichment as an alternative theory of recovery. *See AG Equipment Co.*, 2008 WL 4570319 at *5. Accordingly, Defendant's motion is denied as to Plaintiff's claim for unjust enrichment.

### E. Unconscionability

As Vanderbilt argues, "the Oklahoma Supreme Court has never addressed whether Oklahoma common law would recognize an affirmative cause of action seeking damages

---

[6] In its Notice of Removal, Vanderbilt alleges that the rights to the Contract were assigned to it in June 2018. *See id.*, ¶ 31 and Ex. 2. Vanderbilt makes no reference to this assignment in its dismissal motion. And, the Court cannot consider the assignment in ruling on Defendant's motion as the assignment is not referenced in the Petition. *See, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (addressing circumstances where a court may consider matters outside the pleadings in ruling on a motion to dismiss). Plaintiff is cautioned, however, that it appears the assignment would defeat any equitable claim for unjust enrichment.

for unconscionability in contract." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007). Moreover, "Oklahoma's unconscionability standard is onerous" and a plaintiff must show that "at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties." *Barnes v. Helfenbein*, 548 P.2d 1014, 1020 (Okla.1976). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party." *Id*.

The Petition fails to allege facts sufficient to support a claim of unconscionability. No allegations speak to the terms of the Contract or the circumstances of the Contract at the time it was made. Nor does the Petition contain any allegations to demonstrate Mr. Hurt had an absence of any meaningful choice. The Court finds, therefore, that dismissal of Plaintiff's claim for unconscionability is warranted.

## V. Conclusion

IT IS THEREFORE ORDERED that the Motion to Dismiss of Defendant Vanderbilt Mortgage and Finance, Inc. (Vanderbilt) [Doc. No. 7] is GRANTED in PART and DENIED in PART, as set forth.

IT IS SO ORDERED this 12th day of July, 2019.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE